**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DETROIT FARM AND CIDER, LLC, a Michigan limited liability company, and LEANDRA A. KING, an individual
Plaintiffs,

Case No. _______________
Hon. ____________________

v.

CITY OF DETROIT; JASMINE JACKSON-ROGERS, in her individual capacity,
Defendants.

---

**KUSTRA & BLOOM, PLC**
Steven J. Kustra (P79002)
*Attorneys for Plaintiffs*
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com

---

## COMPLAINT

NOW COME Plaintiffs DETROIT FARM AND CIDER, LLC ("DFC") and LEANDRA A. KING (collectively, "Plaintiffs"), by and through their attorneys, KUSTRA & BLOOM, PLC and for their Complaint against Defendants CITY OF DETROIT and JASMINE JACKSON-ROGERS, (collectively, "Defendants"), states as follows:

## INTRODUCTION

1. The City of Detroit has twice taken Plaintiffs' farm animals from their urban farm on Lawrence Street and has never returned them, disclosed their disposition, or compensated Plaintiffs for their loss.

2. This action arises from two separate seizures of Plaintiffs' animals, occurring nearly five years apart, in which the City of Detroit and its officials obtained possession of Plaintiffs' property and, despite later developments eliminating the asserted basis for retaining that property, failed to return it, account for its disposition, or provide compensation. The second seizure occurred only months after the City approved animal husbandry at the Property, issued a husbandry license, and accepted Plaintiffs' operational plans.

3. **The First Taking (2021-2024).** This case begins with the City's first seizure of Plaintiffs' animals in 2021. Relying solely on an alleged municipal ordinance violation, and not on any claim of cruelty, neglect, or danger to the public, Detroit Animal Care and Control ("DACC") seized Ms. King's horse, Rio, and approximately fourteen chickens pursuant to a warrant authorizing the seizure of "ANY ANIMALS, LIVING OR DEAD." The City thereafter obtained authority to retain and dispose of the animals while the ordinance charges remained pending. On September 27, 2024, however, a jury acquitted Ms. King of the underlying charges after trial. Yet even after the prosecution ended in her favor, Plaintiffs never

recovered their animals, never received an accounting of their disposition, and never received compensation for property the City continued to retain, control, or dispose of after the basis asserted for the seizure had been rejected by a jury.

4. **The Second Taking (2026).** Unlike the 2021 seizure, the events of 2026 occurred after the City of Detroit had expressly approved animal husbandry at Plaintiffs' farm. The City enacted an animal-husbandry ordinance, approved DFC's special land use request, relied upon DACC's recommendation in doing so, and issued Ms. King a husbandry license authorizing such activities. Plaintiffs provided the plans, records, and supporting documentation requested by City officials and sought to work cooperatively within the regulatory framework the City had established. Yet on September 4, 2026, DACC Investigator Jasmine Jackson-Rogers secured a warrant to seize "[a]ny and all animals, living or deceased" after swearing to an affidavit that stated, among other things, that "No documentation has been received." Acting on that warrant, DACC removed dozens of animals and duck eggs from the Property, including animals that were within limits previously authorized or identified by the City. The seizure effectively nullified the very approvals and licenses the City had granted only months earlier and deprived Plaintiffs of their animals without the procedures promised by City law.

## JURISDICTION, VENUE, PARTIES

5. This Court has personal jurisdiction over each Defendant under Fed. R. Civ. P. 4(k)(1)(A). Defendant CITY OF DETROIT is a Michigan municipal corporation located within this District and is subject to general personal jurisdiction in Michigan. Upon information and belief, Defendant JASMINE JACKSON-ROGERS is domiciled in Michigan and is subject to general personal jurisdiction under MCL 600.701(2). Independently, Jackson-Rogers is subject to limited personal jurisdiction under MCL 600.705(2) because Plaintiffs' claims arise from acts and omissions she committed in Detroit, Michigan, in the course of her employment with the City of Detroit, causing injury in Michigan. The exercise of personal jurisdiction over each Defendant comports with the Due Process Clause of the United States Constitution.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the United States Constitution and 42 U.S.C. § 1983. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related state-law claims because they arise from the same nucleus of operative facts.

7. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(1) and (2) because Defendant CITY OF DETROIT resides in this District, Defendant JACKSON-ROGERS is believed to reside in this District, a substantial

part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and the Property that is the subject of this action is located in Detroit, Michigan.

8. Plaintiff DETROIT FARM AND CIDER, LLC (“DFC”) is a Michigan limited liability company that owns and operates an urban farm, orchard, and agricultural-education program, including an MSU Extension 4-H club, at 1600–1636 Lawrence Street, Detroit, Michigan 48206 (the “Property”).

9. Plaintiff LEANDRA A. KING (“King”) is DFC’s sole member and resident agent. King owned the horse Rio and the chickens seized in 2021. The animals and duck eggs seized in 2026 were owned by DFC, King, or both.

10. Defendant CITY OF DETROIT is a municipal corporation organized under Michigan law and at all relevant times acted through its officers, employees, departments, agencies, agents and policymakers, including DACC, Buildings, Safety Engineering and Environmental Department (“BSEED”), and the City's Law Department.

11. Defendant JASMINE JACKSON-ROGERS ("Jackson-Rogers") is, upon information and belief, a resident of Michigan and was at all relevant times employed by DACC as an Animal Husbandry Investigator. Jackson-Rogers was the affiant for the September 4, 2026 warrant application and acted under color of state law at all relevant times. She is sued in her individual capacity.

12. At all times relevant to this Complaint, the actions described herein were undertaken by Defendants under color of state law and pursuant to the customs, practices, policies, ratification decisions, training practices, or decisions of officials possessing final policymaking authority for the City of Detroit.

## FACTUAL ALLEGATIONS

13. Plaintiffs incorporate the preceding allegations, by reference, as if fully set forth herein restated.

### A. The 2021 Seizure and Pre-Arraignment Forfeiture

14. The Property is a fenced, approximately 3.9-acre urban farm with an orchard, stables, coops, and animal enclosures. BSEED records show its legal land use is "Urban Farm" under permit BLD2019-03772, with a Certificate of Occupancy issued December 18, 2022. (**Ex. 1**.)

15. In November 2021, DACC Investigator Steven Way cited Plaintiff King under Detroit City Code § 6-1-5, which at that time generally prohibited the keeping of farm animals within the City. Investigator Way's affidavit acknowledged that the City had issued King an urban-farm permit on November 15, 2021.

16. On November 17, 2021, Investigator Way obtained a warrant authorizing the seizure of "ANY ANIMALS, LIVING OR DEAD." The warrant application did not allege cruelty, neglect, abandonment, or any danger to the public. Pursuant to the warrant, DACC seized a horse known as Rio and approximately

thirteen to fourteen chickens and transported them to facilities in Clare County. (**Ex. 2**.)

17. Following the seizure, DACC informed King that she could recover the animals only by paying DACC's charges and removing the animals from the City of Detroit. DACC's claim form further stated that "[n]o livestock (any species, number) are allowed to return to a City of Detroit location for any reason." **(Ex. 3.)** DACC therefore refused to permit the animals to be returned to the Property even if fees were paid.

18. On February 7, 2022, the City of Detroit Law Department, through Tomika A. Horne and Shannon L. Walker (P53794), filed an "Emergency Motion for an Order to Confiscate Defendant's Horse and Chickens" in the pending ordinance cases. The motion relied exclusively on Detroit City Code § 6-1-5(c), which authorizes DACC to dispose of animals allegedly kept in violation of that section. (**Ex. 4**.)

19. The proof of service attached to the motion reflects that the City attempted service of the motion and notice of hearing on King by first-class mail, which is procedurally deficient and inconsistent with the Michigan Court Rules. *Id*. In addition to being procedurally deficient, it was neither signed, nor addressed properly, containing an incorrect zip code, and addressed to an old address that was

changed 3 years prior, and is not the address of DFC which was where the animals were kept.

20. Additionally, there is no affidavit or other evidence supporting that King was otherwise served by a process server according to the Michigan Court Rules.

21. At the February 16, 2022 hearing, King was not present and was not represented by counsel. The City called no witnesses and offered no exhibits in support of the motion. During the hearing, an attorney present in the courtroom questioned whether King had received notice of the emergency hearing and stated that she was entitled to representation. The court observed that it did not know whether King wanted representation because she had not appeared and thereafter granted the City's motion. **(Ex. 5.)**

22. Following the hearing, the City represented that King's criminal proceedings would continue notwithstanding the confiscation request and that her scheduled arraignment would still occur.

23. The resulting order, entered before King's scheduled March 4, 2022 arraignment and before any adjudication of the ordinance charges, forfeited her ownership rights in the horse and chickens and authorized DACC to "sell, transfer, euthanize, or dispose of" the animals pursuant to Detroit City Code § 6-1-5(c). **(Ex. 6.)**

24. Plaintiffs do not know what became of Rio or the chickens. Despite repeated requests, the City has never disclosed whether the animals were sold, transferred, euthanized, died, or remain in the possession or control of any governmental or private entity.

25. Neither King nor DFC has received any compensation for the animals, their value, or any proceeds derived from their disposition.

26. Beginning in or about 2021 and continuing thereafter, King publicly criticized the City of Detroit, DACC, and the City's handling of the criminal proceedings and animal seizures through news-media interviews, social-media postings, public statements, and community advocacy concerning DFC and its operations.

**B. The 2024 Acquittal and the City's Refusal to Return the Animals**

27. After initially declining to pursue the matter and dismissing the original citations, the City of Detroit reissued the 2021 misdemeanor charges on October 23, 2023, including charges under Detroit City Code § 6-1-5(a) in Case Nos. V13230623 and V13230723.

28. On September 27, 2024, after a five-day jury trial, King was found not guilty on all charges. (**Ex. 7**.)

29. Following King's acquittal, the City of Detroit did not return Rio or the chickens, disclose their whereabouts or disposition, provide any accounting

concerning the animals, pay compensation for their loss, or identify any procedure through which Plaintiffs could obtain their return or value.

30. Upon information and belief, following King's acquittal, neither DACC nor the City of Detroit initiated any proceeding through which Plaintiffs could recover the animals, determine their disposition, challenge the City's continued retention of the animals or any proceeds derived from them, or obtain compensation.

31. On May 1, 2026, DFC sent a written demand to DACC and its Director requesting that the City return the horse and chickens seized in 2021 or compensate Plaintiffs for their fair market value. The City of Detroit has done neither.

**C. The City Approves Animal Husbandry at the Property**

32. In 2024, the City of Detroit adopted an animal-husbandry ordinance, Detroit City Code §§ 6-8-1 et seq. The ordinance permits urban farms to maintain specified numbers of animals and authorizes increased species and animal counts for qualifying educational and 4-H-related programs following governmental review and approval. The ordinance further provides that an animal-husbandry license remains valid unless suspended or revoked following written notice and a show-cause hearing. Detroit City Code §§ 6-8-4, 6-8-37, and 6-8-38.

33. On April 15, 2026, following a public hearing at which thirteen individuals spoke in favor of the application and no person appeared in opposition, BSEED approved DFC's Special Land Use Application (SLU2025-00027), effective

April 30, 2026, authorizing DFC to intensify its existing urban-farm operations by adding animal husbandry and beekeeping for educational, agricultural, and farm-related activities. Prior to the approval, DACC submitted a recommendation supporting the application on April 8, 2026.

**34.** In approving the application, BSEED determined that the proposed use was not anticipated to create risks to public health, safety, or welfare. **(Ex. 1.)**

35. On the same date, April 15, 2026, the City issued Animal Husbandry License No. F26-000102 to King, effective through April 15, 2027. **(Ex. 8.)**.

36. As of April 15, 2026, the City of Detroit had formally approved animal husbandry activities at the Property through legislative action, land-use approval, departmental review, and licensure.

**D. DACC Establishes Interim Animal Limits and Receives Plaintiffs' Compliance Materials**

37. On April 29, 2026, Jackson-Rogers provided Plaintiffs with a document entitled "DACC 4-H Livestock and Farm Animal Policy," which she stated was "going through being signed right now." On the same date, Jackson-Rogers advised Plaintiffs that DACC would permit the following animal numbers on an interim basis: two horses, four sheep, four goats, twenty-five ducks, twenty-five chickens, and one cow.

38. On May 1, 2026, DFC submitted to DACC its biosecurity, veterinary-care, emergency-response, and manure-management plans. The submission was

copied to DACC's Director, DFC's counsel, and the Michigan Department of Agriculture and Rural Development ("MDARD").

39. Plaintiffs provided the plans and supporting documentation requested by City officials and continued to communicate with DACC regarding compliance with applicable husbandry requirements and expectations.

**40.** On July 17, 2026, following an on-site inspection, MDARD determined that DFC's livestock facility and submitted plans conformed to applicable Generally Accepted Agricultural and Management Practices ("GAAMPs") governing the care of farm animals and manure management. MDARD's review reflected planned housing for seven horses, ten sheep, twelve goats, four alpacas, forty-six ducks, thirty-nine chickens, and four emus at the Property. **(Ex. 9.)**

41. Counsel for DFC actively communicated with representatives of the City of Detroit, by way of the City's Law Department, in an effort to streamline communications, address regulatory concerns, and resolve outstanding issues relating to both animal husbandry and the Property. Throughout this period, Plaintiffs and their counsel continued to provide requested information, respond to City inquiries, and work cooperatively toward compliance with City requirements.

42. On August 12, 2026, a Senior Assistant Corporation Counsel for the City of Detroit informed DFC's counsel that, under the City's interpretation of the animal-husbandry ordinance, DFC would be required to reduce its chickens from

thirty-nine to fifteen, ducks from forty-six to fifteen, and goats to no more than four, while the permissible number of horses remained under review. The City requested revised plans for further consideration.

43. The August 12, 2026 correspondence acknowledged that the City had received and reviewed Plaintiffs' submissions and was actively evaluating animal numbers, species, and proposed operations at the Property.

44. Despite these ongoing communications and good faith cooperative efforts, including the involvement of Plaintiffs' counsel and multiple City departments, DACC did not notify Plaintiffs or their counsel that it intended to seek a warrant for the seizure of Plaintiffs' animals. Instead, less than one month after the August 12, 2026 correspondence, Defendants sought and obtained a warrant authorizing the seizure of "any and all animals, living or deceased" from the Property.

45. At all relevant times before the September 4, 2026 warrant was sought, Plaintiffs and their counsel remained actively engaged with DACC, BSEED, and the City's Law Department concerning animal husbandry operations, compliance issues, requested documentation, and potential resolutions. Defendants therefore had direct access to Plaintiffs and their counsel and were aware that communications regarding the Property and its operations remained ongoing.

46. On August 20, 2026, Michigan State University Extension suspended DFC's 4-H club after being informed by DACC that 4-H programming was not authorized at the Property. Upon information and belief, DACC's statements omitted material facts regarding the City's prior approvals and ongoing review of DFC's operations. As a result, DFC lost its 4-H affiliation. The suspension then became part of the factual narrative relied upon by DACC to characterize Plaintiffs as out of compliance and to support the September 4, 2026 warrant application.

47. The suspension of DFC's 4-H club substantially interfered with DFC's educational programming, community outreach, and agricultural activities.

48. As a result of DACC's communications regarding DFC's authority to conduct 4-H programming, DFC lost its MSU Extension-affiliated 4-H club, disrupting educational programming, community outreach activities, youth participation opportunities, and the agricultural mission of the Property.

**E. Plaintiffs' Public Advocacy and Criticism of the City of Detroit**

49. At all relevant times, King has used traditional media, social media, public appearances, and community advocacy to promote DFC, its educational programming, and its operations.

50. Prior to the disputes described herein, media coverage concerning DFC generally highlighted the City's support for DFC and urban agriculture initiatives within Detroit.

51. Plaintiffs communicated those criticisms through interviews with local and regional news outlets, public statements, community meetings, social-media posts, and other public forums.

52. King's social-media accounts contained statements expressing dissatisfaction with the actions of the City of Detroit and its officials, including allegations that City personnel were engaging in selective enforcement, treating Plaintiffs differently from similarly situated persons, and improperly administering ordinances affecting DFC.

53. City officials, including personnel within DACC, BSEED, and the City's Law Department, were aware of Plaintiffs' public statements and criticisms. Plaintiffs' statements were published through widely circulated news outlets, repeatedly shared through social media, and directly concerned actions taken by City officials.

54. On or about April 5, 2024, multiple media outlets reported on King's dispute with the City concerning the pending criminal prosecution and the prior seizure of Plaintiffs' animals.

55. In those reports, King publicly criticized the City's handling of DFC, stating that communication from City officials ceased after she began raising questions concerning zoning issues and the reopening of DFC.

56. During the same period, City representatives publicly defended the enforcement actions taken against Plaintiffs and asserted that the City's actions were intended to address concerns associated with the keeping of farm animals within the City.

57. On or about August 30, 2026, King publicly announced through social media that she intended to sell the Property because of her continuing disputes with the City of Detroit and the financial impact of those disputes on DFC.

58. On September 4, 2026, the Detroit Free Press published an article entitled "Detroit Farm and Cider owner selling after years of fighting with city."

59. In connection with that article, King publicly stated that she was exhausted from years of disputes with City officials and that the ongoing litigation and enforcement actions had imposed substantial financial hardship.

60. The article also reported the City's position that, notwithstanding the City's approval of DFC's Special Land Use application and animal husbandry activities, Plaintiffs remained subject to additional compliance requirements.

61. The public criticisms described above preceded and continued throughout many of the actions challenged in this Complaint, including the City's ongoing enforcement activities, interference with DFC's 4-H programming, and the September 4, 2026 seizure.

62. City personnel referenced, discussed, reviewed, monitored, or otherwise became aware of Plaintiffs' public statements and social-media activity before the September 4, 2026 seizure.

**F. The September 4, 2026 Affidavit and Warrant**

63. On September 4, 2026, Magistrate Charlton signed a search warrant at approximately 12:36 p.m. based upon an affidavit submitted by Jackson-Rogers and reviewed and approved by Supervising Assistant Corporation Counsel Shannon L. Walker before its submission to the magistrate. The warrant authorized a search of "[t]he entire premises" and the seizure of "[a]ny and all animals, living or deceased," animal "housing, training and care paraphernalia," and documents relating to ownership of animals. **(Ex. 10.)**

64. At the time the warrant application was submitted, Defendants knew that the City of Detroit had approved DFC's Special Land Use application, issued an Animal Husbandry License, received and reviewed Plaintiffs' operational and animal-management plans, participated in ongoing communications with Plaintiffs and their counsel regarding animal husbandry at the Property, and received MDARD's determination that DFC's operations conformed to applicable GAAMP standards.

65. Notwithstanding those facts, Jackson-Rogers' affidavit alleged that, after King "purchased her husbandry license," she had "refused to participate" in a policy that was still "being reviewed and finalized." The affidavit further stated:

> "No documentation has been received. … There is probable cause to believe that there is one offense of Chapter 6 of the Detroit City Code of Ordinances (harboring farm animals not permitted) and that there are illegal animals inside. … [A]nimals in need of care [should be] seized …." (**Ex. 11** ¶¶ 2–6.)

66. The affidavit did not allege that any animal at the Property had been abused, neglected, abandoned, injured, improperly housed, or subjected to unsafe conditions. Nor did it identify any threat to public health or safety.

67. The affidavit did not identify the number of animals allegedly present, the number allegedly permitted, the number allegedly in excess of any applicable limit, or which specific animals were purportedly possessed in violation of law.

68. The affidavit further failed to disclose that Plaintiffs had submitted the plans and documentation requested by City officials, that the City had engaged in months of communications with Plaintiffs and their counsel regarding compliance issues, that City officials had continued to review and evaluate those submissions, and that DFC had previously been authorized by DACC to maintain specified numbers of animals on an interim basis.

69. Upon information and belief, the warrant application was submitted only days after DFC's 4-H program had been suspended following communications

initiated by DACC and shortly after King publicly announced her intention to sell the Property because of her ongoing disputes with the City of Detroit.

**G. The Affidavit's False Statements and Material Omissions**

70. Jackson-Rogers knew, or acted with reckless disregard for the truth, when she submitted the September 4, 2026 affidavit. The affidavit contained materially false statements and omitted material information known to DACC, the City's Law Department, and other City officials involved in the regulation of DFC's animal husbandry operations.

71. The affidavit's statement that "[n]o documentation has been received" was false. Before submission of the affidavit, DACC, the City's Law Department, and other City officials had received and reviewed documentation from Plaintiffs, including DFC's biosecurity, veterinary-care, emergency-response, and manure-management plans; livestock placement information; MDARD's July 17, 2026 compliance determination; Coggins testing documentation; and additional materials submitted by Plaintiffs and their counsel. The affidavit itself references several of those materials. (Ex. 11.)

72. The affidavit's assertion that King "refused to participate" in a policy was misleading. The policy referenced in the affidavit was not an enacted ordinance, regulation, or formally adopted City policy. Jackson-Rogers previously represented that the policy was still "going through being signed." Plaintiffs questioned the

policy's legal basis, continued communicating with City officials through counsel, and submitted the plans and documentation requested by DACC. *Id*.

73. The affidavit omitted that, for months before the warrant application, Plaintiffs and their counsel had been actively communicating with DACC, BSEED, and the City's Law Department regarding animal husbandry operations at the Property; that the City had requested additional information from Plaintiffs; and that the City continued reviewing Plaintiffs' submissions through at least August 2026. *Id.*

74. The affidavit omitted that DACC had previously authorized Plaintiffs to maintain specified numbers of animals on an interim basis, including two horses, four goats, twenty-five ducks, and twenty-five chickens, and that several of the animals ultimately seized fell within those limits.

75. The affidavit omitted that the City of Detroit had approved DFC's Special Land Use application, issued Animal Husbandry License No. F26-000102, accepted DACC's recommendation supporting approval of the use, and continued to engage with Plaintiffs concerning compliance issues after issuance of those approvals.

76. No DACC employee conducted a new inspection of the Property on September 3, 2026, and photographs submitted in support of the warrant application were taken during earlier visits to the Property.

77. The affidavit identified no facts supporting the conclusion that the animals were "illegal" or "in need of care." The affidavit alleged no abuse, cruelty, neglect, disease, abandonment, threat to public safety, or violation of any animal welfare standard. Nor did it identify which specific animals were allegedly possessed in violation of law.

78. The statements and omissions identified above were material to the magistrate's probable-cause determination. Had the omitted information been disclosed and the false or misleading information corrected, probable cause would not have existed to authorize the seizure of "any and all animals, living or deceased" from the Property.

**H. The September 4, 2026 Seizure**

79. Later that same day, Jackson-Rogers and DACC personnel executed the warrant at the Property. According to DACC's removal records, DACC seized thirty-two ducks, one horse, four goats, twelve chickens, and eighty-six duck eggs. **(Ex. 12.)** The warrant did not identify or authorize the seizure of duck eggs.

80. The seized animals included numerous animals that fell within the numerical limits previously communicated or authorized by DACC and within the limitations later identified by the City during its ongoing review of Plaintiffs' animal husbandry operations.

81. Prior to seeking the warrant, Defendants were aware that Plaintiffs had disclosed proposed animal counts to MDARD and City officials, including seven horses, ten sheep, twelve goats, four alpacas, forty-six ducks, thirty-nine chickens, and four emus. MDARD thereafter determined that DFC's livestock facility and submitted plans conformed to applicable GAAMP standards. Defendants therefore knew the species and approximate number of animals located at the Property before submitting the warrant application.

82. Based upon the animal limits previously provided by DACC and the limits identified in the City's August 12, 2026 correspondence, the animals seized included:

| **Species** | **Seized** | **DACC interim (Apr. 29)** | **Alleged City Law minimum (Aug. 12)** | **Excess** |
|---|---|---|---|---|
| Chickens | 12 | 25 | 15 | None |
| Goats | 4 | 4 | No more than 4 | None |
| Horse | 1 | 2 | To be evaluated | None |
| Ducks | 32 | 25 | 15 | 7–17 |
| Duck eggs | 86 | Not animals | Not addressed | N/A |

83. Thus, the warrant authorized the seizure of, and DACC in fact seized, numerous animals that were not alleged to exceed any numerical limit previously established or communicated by the City.

84. At the time of the seizure, the City had already approved DFC's Special Land Use application, issued an Animal Husbandry License, received Plaintiffs'

operational plans and supporting documentation, reviewed animal-count information, communicated with Plaintiffs through counsel concerning compliance issues, and continued evaluating Plaintiffs' submissions.

85. Nevertheless, DACC seized all animals identified during execution of the warrant, including animals that were within previously approved or communicated limits and duck eggs that were not described anywhere in the warrant.

## I. Criminal Charges Arising from the September 2026 Investigation

86. Following the September 4, 2026 search and seizure, Defendants caused no less than fifteen (15) misdemeanor citations[1] to be issued against King arising out of the same investigation, the same alleged ordinance violations, and the same animal husbandry activities that formed the basis of the warrant application.

87. The citations provided to King at or near the time of issuance were substantially illegible and, upon information and belief, omitted or failed to clearly identify material information concerning the alleged offenses, including the factual basis for the charges.

88. The citations provided to King appeared largely blank or otherwise incomplete at the time they were issued. Plaintiffs were unable to determine from the face of the citations the precise factual basis of the alleged offenses and reserve

[1] Citation numbers: V132304, V132305, V132306, V132307, V132308, V132309, V132310, V132312, V132313, V132314, V132316, V132317, V132318, V132319, V132320

the right to amend this Complaint as additional information becomes available through discovery.

89. To date Plaintiff has not received a court date for an appearance on the charges.

90. The charges were based upon the same facts, animal counts, communications, and documentation known to Defendants before submission of the September 4, 2026 warrant application.

91. At the time the charges were issued, Defendants knew that the City had approved DFC's Special Land Use application, issued a valid Animal Husbandry License, received Plaintiffs' operational and husbandry plans, received MDARD's compliance determination, and remained engaged in communications with Plaintiffs and their counsel concerning animal husbandry operations at the Property.

92. The criminal proceedings arising from the September 2026 investigation remain pending and have not been dismissed, although Plaintiffs have not been provided a hearing date or other meaningful opportunity to challenge the allegations. Plaintiffs deny the allegations and contend that the charges were issued despite Defendants' prior approvals, knowledge, and continued review of DFC's operations.

93. The criminal charges, seizure of animals, interference with DFC's 4-H activities, and continued enforcement efforts occurred after years of public criticism

by King concerning the City's treatment of DFC, the 2021 prosecution, the seizure of animals, and the City's permitting and enforcement practices.

**J. No Process Following the September 4, 2026 Seizure**

94. Following the September 4, 2026 seizure, Plaintiffs immediately sought information concerning the basis for the seizure, the location of the animals, and the procedures available to contest DACC's continued possession of the animals and eggs.

95. Detroit City Code § 6-1-4 entitles an owner whose animal is seized from private property to meet with the DACC Administrator within seventy-two hours of the seizure. On September 5, 2026, Plaintiffs demanded that meeting in writing. No meeting was ever provided.

96. Defendants have never provided Plaintiffs with a post-seizure hearing at which Plaintiffs could challenge the legal or factual basis for the seizure or continued retention of the animals and eggs.

97. Defendants have not provided written notice of any suspension or revocation of King's Animal Husbandry License and have not initiated the notice and hearing procedures required by Detroit City Code §§ 6-8-37 and 6-8-38.

98. Defendants have not initiated any proceeding pursuant to MCL 780.655(3), which provides that property seized pursuant to a warrant shall be

disposed of under the direction of the judge or district court magistrate who issued the warrant.

99. Defendants have not disclosed the identity, location, condition, health status, disposition, transfer, sale, euthanasia, or present custody of any animal or egg seized on September 4, 2026.

100. Defendants continue to exercise possession, custody, and control over the seized property, or information concerning the seized property, while denying Plaintiffs access to that property and any meaningful mechanism by which to obtain its return.

101. As a result of Defendants' actions, Plaintiffs have been deprived of the possession, use, enjoyment, educational use, breeding use, and economic value of the animals and eggs seized from the Property.

**COUNT I**
**VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE**
(42 U.S.C. § 1983, Franks Violation, Lack of Probable Cause, Lack of Particularity, and Unreasonable Seizure — Against Jackson-Rogers)

102. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

103. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, protects individuals against unreasonable searches and seizures and

requires that warrants be supported by probable cause and particularly describe the place to be searched and the things to be seized. U.S. Const. amend. IV.

104. Plaintiffs' animals and duck eggs constituted property and effects protected by the Fourth Amendment. The execution of the September 4, 2026 warrant and removal of those animals and eggs constituted a search and seizure within the meaning of the Fourth Amendment.

105. At all relevant times, Defendant Jackson-Rogers acted under color of state law in her capacity as a DACC Animal Husbandry Investigator

106. Defendant Jackson-Rogers knowingly, intentionally, or with reckless disregard for the truth included materially false statements and omitted material information from the September 4, 2026 warrant affidavit, including but not limited to: (a) the statement that "No documentation has been received"; (b) the omission of Plaintiffs' submitted husbandry, biosecurity, veterinary-care, emergency-response, and manure-management plans; (c) the omission of MDARD's favorable review and GAAMP-compliance determination; (d) the omission that DACC and other City officials had engaged in ongoing communications with Plaintiffs and their counsel concerning compliance issues; (e) the omission that DACC had previously authorized Plaintiffs to maintain specified numbers of animals on an interim basis; and (f) the omission that no evidence of animal cruelty, neglect, abandonment, disease, or threat to public safety had been observed.

107. Defendant Jackson-Rogers possessed, or had access to, information demonstrating that Plaintiffs had submitted documentation to City officials, that DACC had authorized interim animal counts, that the City had approved animal husbandry activities at the Property, and that MDARD had reviewed Plaintiffs' operations. Despite that knowledge, Defendant represented to the magistrate that no documentation had been received and omitted information necessary to permit an accurate probable-cause determination.

108. Had the affidavit accurately disclosed the foregoing information and omitted the false and misleading statements, probable cause would not have existed to search the Property or seize all animals located there.

109. Defendant Jackson-Rogers is liable under *Franks v. Delaware*, 438 U.S. 154 (1978), because she knowingly, intentionally, or with reckless disregard for the truth included materially false statements and omitted material information from the warrant affidavit. Had the affidavit been corrected to remove the false statements and include the omitted information, probable cause would not have existed to issue the warrant.

110. The warrant further lacked probable cause because it failed to identify any specific animal allegedly possessed in violation of law and failed to establish probable cause that every category of property authorized to be seized constituted evidence, contraband, or an instrumentality of a crime.

111. The warrant lacked particularity because it authorized the seizure of "any and all animals, living or deceased" from a 3.9-acre urban farm without identifying the species, number, or location of any allegedly unlawful animal, or otherwise limiting the scope of the seizure.

112. The warrant therefore operated as an unconstitutional general warrant and authorized a search and seizure broader than that permitted by the Fourth Amendment.

113. Acting under the authority of the warrant, Jackson-Rogers participated in and caused the seizure of property for which no probable cause existed, including one horse, four goats, twelve chickens, and eighty-six duck eggs, notwithstanding that many of those animals fell within limits previously authorized or communicated by the City of Detroit.

114. The constitutional rights violated by Defendant Jackson-Rogers were clearly established at the time of her conduct. A reasonable official would have known that knowingly or recklessly providing false information to obtain a warrant, omitting material facts necessary to a probable-cause determination, obtaining a general warrant unsupported by particularized probable cause, and seizing property beyond lawful authority violate the Fourth Amendment.

115. At all relevant times, Defendant Jackson-Rogers knew she was acting under color of state law and was required to abide by all local, state, and federal laws

in exercising her duties including making truthful representations to support a finding of probable cause in the warrant application.

116. At all relevant times, Defendant Jackson-Rogers's omissions and reckless disregard for the truth of the veracity of her allegations in her affidavit resulted in a warrant being issued absent probable cause.

117. Any reasonable official, acting under color of state law, would have known that engaging in the conduct committed by Defendant Jackson-Rogers would have constituted a violation of a constitutional right – specifically the Fourth Amendment.

118. The constitutional rights violated were clearly established at the time of Defendant Jackson-Rogers' conduct, such that any reasonable officer would have known that the conduct was unlawful.

119. Defendant Jackson-Rogers' actions also constituted an unreasonable seizure of Plaintiffs' property, as she participated in, facilitated, and/or caused the taking of property without lawful authority.

120. As a direct and proximate result of Defendant Jackson-Rogers' actions, Plaintiffs suffered the loss of their animals and eggs, loss of use and enjoyment of their property, financial damages, consequential damages, and other injuries to be proven at trial.

121. Plaintiffs are entitled to nominal damages, compensatory damages, punitive damages, attorney fees and costs pursuant to 42 U.S.C. § 1988, and all other relief authorized by law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant Jackson-Rogers and award all relief available under 42 U.S.C. § 1983, including nominal damages, compensatory damages, punitive damages in an amount sufficient to punish and deter similar misconduct, declaratory relief, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS**
**(2026 Seizure)**
(42 U.S.C. § 1983 — Against the City and Jackson-Rogers)

122. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

123. The Fourteenth Amendment prohibits the deprivation of property without due process of law.

124. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

125. Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in "life, liberty, or property," but deprivation of those interests without due process of law. *Id.*

126. Plaintiffs possess constitutionally protected property interests in the animals and duck eggs seized on September 4, 2026, and in King's Animal Husbandry License issued by the City of Detroit.

127. Defendants deprived Plaintiffs of those protected property interests without constitutionally adequate process.

128. Defendants obtained possession of Plaintiffs' property through a warrant procured by materially false and misleading statements and material omissions.

129. Following the seizure, Defendants failed to provide Plaintiffs with the post-seizure meeting required by Detroit City Code § 6-1-4 despite Plaintiffs' written request.

130. Defendants have continued to retain Plaintiffs' animals and eggs without providing a prompt and meaningful post-deprivation hearing at which Plaintiffs may challenge the factual or legal basis for the seizure and continued detention of their property.

131. Defendants have not provided written notice of suspension or revocation of King's Animal Husbandry License and have not initiated the procedures required by Detroit City Code §§ 6-8-37 and 6-8-38.

132. Defendants have asserted authority to possess, retain, transfer, sell, rehome, euthanize, or otherwise dispose of Plaintiffs' property without affording Plaintiffs a meaningful opportunity to be heard.

133. Defendants have further refused to disclose the location, condition, status, or disposition of the seized animals and eggs, thereby preventing Plaintiffs from meaningfully protecting their property interests.

134. The procedures employed by Defendants were constitutionally inadequate under the circumstances and deprived Plaintiffs of property without due process of law.

135. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered loss of property, loss of use and enjoyment of their property, economic damages, consequential damages, and other injuries to be proven at trial.

136. Plaintiffs are entitled to compensatory damages, declaratory relief, injunctive relief, attorney fees and costs pursuant to 42 U.S.C. § 1988, and all other relief authorized by law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants City of Detroit and Jackson-Rogers

and award compensatory damages, declaratory relief, injunctive relief including the return of Plaintiffs' property, attorney fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS
**(Retention of the 2021 Animals After Acquittal)**
(42 U.S.C. § 1983 — Against the City)

137. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

138. The Fourteenth Amendment prohibits the deprivation of property without due process of law.

139. When the government takes property solely because of a criminal charge that does not end in conviction, due process forbids it to keep the property or to make the owner prove her innocence to recover it. *See Nelson v. Colorado*, 581 U.S. 128 (2017).

140. Plaintiffs possessed constitutionally protected property interests in Rio and the chickens seized by the City of Detroit in November 2021.

141. The City of Detroit obtained possession and control of those animals solely in connection with ordinance-violation proceedings alleging that King violated Detroit City Code § 6-1-5.

142. On September 27, 2024, a jury found King not guilty of all charges arising from those proceedings.

143. Following King's acquittal, Plaintiffs demanded the return of the animals or compensation for their value.

144. Despite King's acquittal, the City of Detroit has never returned the animals, disclosed their whereabouts or disposition, provided an accounting concerning them, identified any proceeds derived from them, compensated Plaintiffs for their loss, or provided a meaningful procedure through which Plaintiffs may recover the animals, their value, or any proceeds associated with them.

145. Upon information and belief, the City of Detroit continues to retain the animals, their value, proceeds derived from them, information concerning their disposition, or some combination thereof.

146. Following King's acquittal, no valid governmental basis remained for the City's continued retention of the animals, their value, or any proceeds derived from them.

147. By continuing to retain the animals, their value, and/or information concerning their disposition while failing to provide Plaintiffs any meaningful procedure through which to recover their property or obtain compensation, the City of Detroit has deprived Plaintiffs of property without due process of law.

148. As a direct and proximate result of the City's conduct, Plaintiffs have suffered the loss of property, loss of use, consequential damages, financial losses, interest, and additional damages to be proven at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit and award compensatory damages, declaratory relief, appropriate injunctive relief, attorney fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**MONELL LIABILITY**
(42 U.S.C. § 1983 — Against the City)

149. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

150. At all relevant times, Defendant City of Detroit acted through its departments, agencies, policymakers, attorneys, officers, employees, and agents, including DACC, BSEED, and the City's Law Department, and its officials possessing final policymaking authority regarding animal-control enforcement, licensing, seizure practices, and retention of property.

151. The constitutional violations described herein were caused by official municipal policies, longstanding customs, practices, decisions of final policymakers,

ratification by final policymakers, and/or the City of Detroit's deliberate indifference to the constitutional rights of persons affected by DACC enforcement activities.

152. The City of Detroit maintained a policy, practice, or custom of obtaining and executing warrants authorizing the seizure of all animals located on a property based upon generalized allegations of ordinance violations rather than individualized probable cause particularized to specific animals.

153. The September 4, 2026, warrant is an example of that policy or custom. The warrant authorized the seizure of "any and all animals, living or deceased" despite the absence of allegations that any identified animal had been abused, neglected, abandoned, diseased, dangerous, unlawfully possessed, or otherwise subject to seizure.

154. The City of Detroit further maintained a policy, custom, or practice of treating allegedly non-compliant animals as forfeitable property and retaining such property without providing meaningful post-seizure procedures through which owners could challenge the seizure, obtain return of the property, or obtain compensation.

155. Plaintiffs' experience following both the 2021 seizure and the 2026 seizure reflects that policy or custom. In each instance, the City obtained possession of Plaintiffs' animals and thereafter failed to provide constitutionally adequate procedures for recovery of the property.

156. The City of Detroit's retention of Plaintiffs' horse and chickens after Plaintiff King's acquittal demonstrates a continuing municipal policy or custom of retaining seized property even after the asserted basis for governmental possession has ceased to exist.

157. The City of Detroit also maintained a policy, practice, or custom of disregarding procedures established by Detroit's own ordinances governing animal seizures, post-seizure review, notice, license suspension, license revocation, and recovery of property.

158. Upon information and belief, similar actions involving warrant-based animal seizures, retention of animals, and failures to provide post-seizure process have occurred on prior occasions involving DACC investigations.

159. The constitutional violations suffered by Plaintiffs were not isolated acts of a single employee. Rather, multiple City departments, including DACC, City attorneys, enforcement personnel, and supervisory officials participated in or approved the conduct alleged herein.

160. Prior to submission of the September 4, 2026, warrant application, the City of Detroit's Law Department reviewed and approved the affidavit and warrant materials submitted to the magistrate.

161. The warrant application was reviewed and approved by City of Detroit attorneys despite the City of Detroit's possession of documents demonstrating that

Plaintiffs had submitted operational plans, husbandry documentation, compliance materials, veterinary information, and other documentation that contradicted representations made to the magistrate.

162. By reviewing, approving, and authorizing submission of the warrant application despite the known omissions and inaccuracies described herein, the City of Detroit officials possessing policymaking authority ratified the unconstitutional conduct challenged in this action.

163. Following execution of the warrant, City of Detroit policymakers likewise ratified the seizure by continuing to retain Plaintiffs' property, refusing to provide required post-seizure procedures, refusing to disclose the animals' location or disposition, and taking no steps to remedy the constitutional violations.

164. The City of Detroit was deliberately indifferent to the obvious need to train DACC investigators, supervisors, attorneys, and decisionmakers regarding:

(a) Fourth Amendment probable cause requirements;

(b) *Franks* obligations prohibiting false and misleading warrant affidavits;

(c) Constitutional limitations on broad animal-seizure warrants;

(d) Procedural due process requirements applicable to retained property;

(e) Post-seizure notice and hearing requirements;

(f) Constitutional obligations arising when criminal or ordinance proceedings termination in favor of a property owner; and

(g) The limits of government authority to retain, transfer, sell, or dispose of seized property.

165. The need for such training was obvious because DACC employees routinely seek warrants, seize private property, maintain custody over living animals, determine whether property will be returned, and exercise substantial authority affecting protected constitutional rights.

166. Despite that obvious need, the City of Detroit failed to implement adequate training, supervision, auditing, review procedures, or safeguards sufficient to prevent constitutional violations such as those suffered by Plaintiffs.

167. The City of Detroit's policies, customs, ratification decisions, training failures, supervisory failures, and deliberate indifference were moving forces behind the violations of Plaintiffs' Fourth Amendment rights, Fourteenth Amendment procedural due process rights, First Amendment rights, and other constitutional deprivations alleged in this Complaint.

168. As a direct and proximate result of Defendant City of Detroit's policies, customs, ratification decisions, training failures, and deliberate indifference, Plaintiffs suffered the seizure of their property, continued deprivation of their animals and eggs, economic losses, loss of educational and agricultural opportunities, emotional distress, attorney fees, and other damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit, award compensatory damages, declaratory and injunctive relief, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF FIFTH AMENDMENT TAKINGS CLAUSE WITHOUT JUST COMPENSATION**
(U.S. Const. amends. V, XIV; 42 U.S.C. § 1983; Mich. Const. 1963, art. 10, § 2 — Against the City)

169. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

170. The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

171. Plaintiffs possessed legally protected property interests in the animals and eggs described in this Complaint.

172. The Takings Clause protects personal property, including livestock and other tangible personal property, to the same extent it protects real property.

173. In 2021, Defendant City of Detroit seized Plaintiffs' horse, Rio, and chickens and thereafter obtained authority to retain, transfer, sell, euthanize, or otherwise dispose of those animals.

174. The possession and retention of the animals was predicated upon the allegation that Plaintiff King violated Detroit City Code § 6-1-5.

175. On September 27, 2024, a jury found Plaintiff King not guilty of all charges arising from that alleged violation.

176. Following King's acquittal, no valid governmental basis remained for the continued retention of the animals, their value, or any proceeds derived from them.

177. Despite the acquittal, Defendant City of Detroit has failed to return the animals, disclose their disposition, account for any proceeds derived from them, or compensate Plaintiffs for their value.

178. On May 1, 2026, Plaintiffs demanded that Defendant City of Detroit return the animals or compensate Plaintiffs for their fair market value. Defendant has done neither.

179. Plaintiffs do not seek review or reversal of the February 16, 2022 confiscation order. Rather, Plaintiffs seek just compensation for the City's continued retention of the animals, their value, and any proceeds following the termination of the underlying criminal proceedings in King's favor.

180. In the alternative, and pursuant to Fed. R. Civ. P. 8(d)(2), to the extent Defendant City of Detroit contends that the September 4, 2026 seizure was a lawful and authorized exercise of governmental power, Defendant physically appropriated

Plaintiffs' animals and duck eggs, including animals that fell within limits previously established or communicated by the City and duck eggs that were not described in the warrant.

181. Defendant City of Detroit continues to possess, control, retain, transfer, dispose of, or assert ownership authority over that property without paying just compensation.

182. Plaintiffs need not pursue state compensation remedies before bringing this federal constitutional claim.

183. The conduct described herein also constitutes a taking without just compensation in violation of Mich. Const. 1963, art. 10, § 2, giving rise to a claim for inverse condemnation.

184. As a direct and proximate result of Defendant City of Detroit's conduct, Plaintiffs are entitled to just compensation equal to the fair market value of all property taken, retained, transferred, disposed of, or otherwise appropriated by Defendant, together with interest, costs, attorney fees where permitted by law, and all other available relief.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit, award just compensation, declaratory relief, attorney fees and costs where permitted by law,

pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT VI
## FIRST AMENDMENT RETALIATION
(42 U.S.C. § 1983 – Against the City of Detroit)

185. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

186. The First Amendment, applicable to state and local governments through the Fourteenth Amendment, protects Plaintiffs' right to speak, petition, criticize public officials, and comment upon matters of public concern.

187. Plaintiffs engaged in constitutionally protected speech by publicly criticizing the City of Detroit, DACC, and other City officials through newspapers, social media, public statements, interviews, and community advocacy concerning:

(a) the 2021 seizure of Plaintiffs' animals;

(b) the criminal prosecution of King;

(c) The City's permitting and zoning decisions;

(d) alleged selective enforcement by City officials; and

(e) the treatment of DFC by the City of Detroit.

188. Plaintiffs' speech addressed matters of public concern, including governmental conduct, municipal enforcement practices, land-use decisions, and the actions of public officials acting under color of state law.

189. Defendant City of Detroit, through DACC, the City's Law Department, and other City personnel, was aware of Plaintiffs' protected speech and public criticism.

190. After Plaintiffs engaged in the protected speech described above, Defendant City of Detroit subjected Plaintiffs to adverse actions including, but not limited to:

(a) increased investigations and enforcement activity;

(b) repeated issuance of citations and ordinance-enforcement proceedings;

(c) interference with DFC's MSU Extension-affiliated 4-H program;

(d) procurement and execution of the September 4, 2026 warrant;

(e) seizure and continued retention of Plaintiffs' animals and eggs; and

(f) the issuance of multiple misdemeanor citations arising from the September 2026 investigation.

191. The adverse actions described herein would deter a person of ordinary firmness from continuing to criticize government officials or exercise rights protected by the First Amendment.

192. The temporal relationship between Plaintiffs' protected speech and Defendants' enforcement activities, together with Defendants' knowledge of Plaintiffs' public criticism and the pattern of conduct alleged throughout this

Complaint, support the inference that Plaintiffs' protected speech was a substantial or motivating factor in Defendants' actions.

193. Defendant City of Detroit, acting through its departments, employees, policymakers, and agents, undertook or ratified the retaliatory conduct described herein in response to Plaintiffs' protected speech and expressive activities.

194. Defendant City of Detroit lacked a sufficiently compelling and non-retaliatory justification for the adverse actions taken against Plaintiffs.

195. As a direct and proximate result of Defendant City of Detroit's retaliation, Plaintiffs suffered deprivation of constitutional rights, loss of property, interference with business and educational activities, economic losses, emotional distress, reputational harm, litigation expenses, and other damages to be proven at trial.

196. Plaintiffs are entitled to nominal damages, compensatory damages, declaratory relief, injunctive relief, attorney fees and costs pursuant to 42 U.S.C. § 1988, and all other relief authorized by law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit and award nominal damages, compensatory damages, declaratory and injunctive relief, attorney fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNT VII
## RETALIATORY ENFORCEMENT AND RETALIATORY PROSECUTION
(42 U.S.C. § 1983 – First and Fourteenth Amendments—Against the City)

197. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

198. Plaintiffs engaged in constitutionally protected speech by criticizing the City of Detroit, DACC, and other City officials through social media, interviews, newspapers, public statements, and other public forums.

199. Plaintiffs' speech addressed matters of public concern, including the City's seizure of animals, criminal prosecutions, permitting decisions, animal-husbandry regulations, alleged selective enforcement, and the conduct of public officials.

200. Defendant City of Detroit, through DACC, the City's Law Department, and other officials and employees, was aware of Plaintiffs' protected speech and public criticism.

201. Following Plaintiffs' protected speech, Defendant City of Detroit intensified its enforcement efforts against Plaintiffs, including but not limited to:

(a) interfering with DFC's MSU Extension-affiliated 4-H program;

(b) conducting investigations and enforcement activities directed at Plaintiffs;

(c) procuring and executing the September 4, 2026 warrant;

(d) seizing Plaintiffs' animals and eggs;

(e) continuing to retain Plaintiffs' property;

(f) issuing and/or causing the issuance of multiple misdemeanor citations arising out of the September 2026 investigation.

202. The enforcement actions taken against Plaintiffs would deter a person of ordinary firmness from continuing to engage in protected speech criticizing government officials and governmental conduct.

203. Plaintiffs' protected speech was a substantial or motivating factor in Defendant City of Detroit's enforcement decisions and actions.

204. The timing of the challenged enforcement actions, Defendants' awareness of Plaintiffs' public criticism, the interference with DFC's 4-H activities, the September 4, 2026 warrant and seizure, and the subsequent issuance of multiple citations support the inference that Defendants acted with retaliatory motive.

205. Defendant City of Detroit lacked a sufficiently compelling and non-retaliatory basis for the retaliatory enforcement actions described herein.

206. As a direct and proximate result of Defendant's retaliatory enforcement and prosecution, Plaintiffs suffered deprivation of constitutional rights, loss of property, interference with business and educational activities, litigation expenses, economic damages, emotional distress, reputational harm, and other damages to be proven at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit and award nominal damages, compensatory damages, declaratory relief, injunctive relief, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT VIII**
**CLAIM AND DELIVERY**
(MCL 600.2920; MCR 3.105; Fed. R. Civ. P. 64 — Against the City)

207. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

208. Under Michigan law, a plaintiff may maintain an action to recover possession of goods or chattels that have been unlawfully taken or unlawfully detained, together with damages resulting from the taking and detention. MCL 600.2920.

209. Plaintiffs are the owners of and are entitled to immediate possession of the animals and personal property seized from the Property on September 4, 2026, including but not limited to one horse, four goats, twelve chickens, thirty-two ducks, and approximately eighty-six duck eggs, together with any offspring, proceeds, records, or replacements derived therefrom.

210. Defendant City of Detroit, acting through DACC and other departments and agents, possesses, controls, detains, or otherwise exercises dominion over the above-described property.

211. Plaintiffs possess a superior right to possession of the property.

212. Defendant City's continued detention of the property is wrongful because:

(a) Plaintiffs are the lawful owners of the property;

(b) Plaintiffs have demanded the return of the property;

(c) Defendant has refused and continues to refuse to return the property;

(d) Defendant has failed to provide a lawful procedure through which Plaintiffs may recover the property;

(e) Defendant lacks lawful authority to continue retaining the property.

213. The animals and eggs possess unique agricultural, breeding, educational, commercial, and personal value that cannot be fully compensated by money damages alone.

214. Plaintiffs are entitled to immediate possession of the property pending final judgment pursuant to MCR 3.105 and applicable law.

215. To the extent any animal, egg, offspring, proceeds, records, or related property has been sold, transferred, rehomed, euthanized, destroyed, lost, or

otherwise disposed of, Plaintiffs are entitled to recover the fair market value of that property together with damages resulting from its detention and disposition.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant City of Detroit; order the immediate return of all animals, eggs, offspring, records, and related property seized from Plaintiffs; award damages for the detention, transfer, destruction, or disposition of any property that cannot be returned; award costs, interest, and all other relief authorized by law; and grant such other and further relief as this Court deems just and proper.

## COUNT IX
## COMMON-LAW CONVERSION

216. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

217. At all relevant times, Plaintiffs owned and had the immediate right to possess the animals, livestock, poultry, eggs, offspring, and related personal property seized from the Property on September 4, 2026, including but not limited to one horse, four goats, twelve chickens, thirty-two ducks, and approximately eighty-six duck eggs.

218. Defendants exercised dominion and control over Plaintiffs' property by procuring the September 4, 2026 warrant, executing the seizure, taking possession

of the property, and continuing to exercise custody, control, and authority over the property after its seizure.

219. Defendants' exercise of dominion and control over Plaintiffs' property was inconsistent with Plaintiffs' ownership rights and right to immediate possession.

220. Defendants have retained possession of the seized property, refused to return the property upon demand, and continue to exercise control over the property in a manner inconsistent with Plaintiffs' ownership rights.

221. Upon information and belief, Defendants have transferred, relocated, rehomed, sold, euthanized, destroyed, disposed of, concealed, or otherwise exercised ownership rights over some or all of the seized property without Plaintiffs' authorization.

222. Defendants have failed and refused to disclose the location, condition, status, disposition, or present custody of the seized property despite repeated requests by Plaintiffs.

223. Defendants' conduct constitutes a distinct act of dominion wrongfully exerted over Plaintiffs' personal property in denial of and inconsistent with Plaintiffs' ownership rights.

224. At all relevant times, Defendants knew or should have known that Plaintiffs possessed lawful ownership interests in the seized property and that Plaintiffs continued to assert rights to the return of that property.

225. As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered damages including, but not limited to:

(a) Loss of possession and use of the property;

(b) Loss of agricultural, breeding, educational, commercial, and productive value associated with the property;

(c) Loss of offspring, eggs, and other products derived from the animals;

(d) Expenses incurred attempting to locate, recover, or replace the property;

(e) Diminution in value of the property;

(f) Consequential damages; and

(g) Other economic and non-economic damages to be proven at trial.

226. Defendants' conduct was intentional, willful, and undertaken in conscious disregard of Plaintiffs' ownership rights.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants City of Detroit and Jackson-Rogers; award compensatory damages, consequential damages, interest, costs, exemplary damages as permitted by Michigan law, and such other and further relief as the Court deems just and proper.

## COUNT X
## STATUTORY CONVERSION

227. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

228. At all relevant times, Plaintiffs owned and had the immediate right to possess the animals, livestock, poultry, eggs, offspring, proceeds, and related personal property seized from the Property, including but not limited to one horse, four goats, twelve chickens, thirty-two ducks, and approximately eighty-six duck eggs.

229. Defendants obtained possession, custody, and control of Plaintiffs' property through the September 4, 2026 seizure and thereafter exercised ownership, dominion, and control over that property.

230. Following the seizure, Defendants retained possession of the property, refused to return it upon demand, and exercised authority over the property inconsistent with Plaintiffs' ownership rights.

231. Upon information and belief, Defendants converted Plaintiffs' property to their own use by retaining, transferring, rehoming, relocating, selling, euthanizing, destroying, disposing of, exercising ownership over, or otherwise controlling the property without Plaintiffs' authorization and without lawful justification.

232. Upon information and belief, Defendants have exercised ownership rights over the seized animals and eggs by determining their location, custody,

disposition, transfer, sale, destruction, or continued detention while excluding Plaintiffs from possession and control.

233. In the alternative, to the extent one Defendant did not personally convert the property to his, her, or its own use, that Defendant substantially assisted, encouraged, participated in, directed, authorized, ratified, or benefited from the statutory conversion of Plaintiffs' property.

234. Defendants have refused to account for the location, status, condition, transfer, disposition, sale, destruction, proceeds, or present custody of the seized property despite repeated requests by Plaintiffs.

235. As a direct and proximate result of Defendants' statutory conversion, Plaintiffs have sustained actual damages including, but not limited to:

(a) Loss of the animals and eggs;

(b) Loss of possession and use of the property;

(c) Loss of agricultural, breeding, educational, commercial, and productive value;

(d) Loss of offspring, eggs, and other products derived from the animals;

(e) Consequential and incidental damages;

(f) Expenses incurred attempting to recover the property; and

(g) Other damages to be proven at trial.

236. Defendants' conduct constitutes statutory conversion under MCL 600.2919a.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants City of Detroit and Jackson-Rogers; award treble damages pursuant to MCL 600.2919a, together with costs, attorney fees, statutory interest, and such other and further relief as this Court deems just and proper.

**COUNT XI**
**Declaratory and Injunctive Relief**
(28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 65; Mich. Const. 1963, art. 1, §§ 11, 17 — Against All Defendants)

237. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

238. An actual and justiciable controversy exists between Plaintiffs and Defendants concerning Plaintiffs' rights to possess, maintain, care for, and recover their animals and other property and concerning Defendants' authority to continue retaining, transferring, rehoming, selling, euthanizing, or otherwise disposing of that property.

239. Defendants contend that they lawfully seized and continue to lawfully retain Plaintiffs' animals, eggs, and related property. Plaintiffs contend that the seizure, continued detention, threatened disposition, and related enforcement actions are unlawful and unconstitutional.

240. Defendants continue to assert authority over Plaintiffs' property and have not disclaimed the ability to transfer, sell, relocate, rehome, euthanize, destroy, or otherwise dispose of the seized animals and eggs.

241. Defendants have failed to disclose the identity, location, condition, health status, disposition, transfer, sale, euthanasia, or present custody of the seized animals and eggs.

242. Plaintiffs have suffered and continue to suffer immediate and irreparable injury, including deprivation of unique animals and livestock, loss of breeding opportunities, interference with agricultural and educational activities, loss of use and enjoyment of property, and continuing violations of constitutional rights.

243. Monetary damages alone cannot adequately compensate Plaintiffs for the loss of unique animals, breeding stock, educational livestock, agricultural operations, and other property having unique and irreplaceable characteristics.

244. Unless restrained by this Court, Defendants are likely to continue retaining the seized property and may transfer, rehome, sell, relocate, euthanize, destroy, or otherwise dispose of the property before final resolution of this action.

245. A declaration of the parties' rights and obligations will resolve the uncertainty and controversy giving rise to this action and clarify the legal rights of the parties.

246. Plaintiffs are entitled to preliminary and permanent injunctive relief preventing Defendants from transferring, rehoming, selling, relocating, euthanizing, destroying, or otherwise disposing of the seized animals and related property during the pendency of this action.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A. Declare that Plaintiffs possess lawful ownership and possessory interests in the animals, eggs, offspring, records, and other property seized from the Property;

B. Declare that Defendants' continued retention of Plaintiffs' property without constitutionally adequate procedures violates Plaintiffs' rights under the United States Constitution and Michigan law;

C. Declare that Plaintiffs are entitled to information concerning the location, condition, status, disposition, transfer, sale, or custody of the seized property;

D. Declare that Plaintiffs are entitled to immediate possession of any seized property that remains in Defendants' possession or control;

E. Preliminarily and permanently enjoin Defendants from transferring, rehoming, selling, relocating, euthanizing, destroying, or otherwise disposing of Plaintiffs' animals, eggs, offspring, records, or related property absent further order of this Court;

F. Order Defendants to preserve all records, photographs, communications, veterinary records, transfer records, and other information relating to the seized property; and

G. Grant such other and further declaratory, equitable, and injunctive relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and grant the following relief:

A. Temporarily, preliminarily, and permanently enjoin Defendants, their officers, agents, employees, departments, and all persons acting in concert with them from transferring, selling, relocating, rehoming, euthanizing, destroying, or otherwise disposing of any animal, egg, offspring, record, or other property seized from Plaintiffs on September 4, 2026;

B. Order Defendants to disclose the present location, condition, health status, disposition, custody, ownership, and transfer history of each animal, egg, offspring, and item of property seized from Plaintiffs in 2021 and 2026;

C. Order Defendant City of Detroit to immediately return all animals, eggs, offspring, records, and other property seized on September 4, 2026, to Plaintiffs, without boarding, impoundment, care, or other charges, and enter judgment for possession pursuant to Plaintiffs' Claim and Delivery claim;

D. Order Defendant City of Detroit to return any animal or property seized in 2021 that remains within its possession, custody, or control, and to account for any animal or property that was transferred, sold, euthanized, destroyed, or otherwise disposed of;

E. Award Plaintiffs compensatory damages for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution;

F. Award nominal damages for violations of Plaintiffs' constitutional rights;

G. Award punitive damages against Defendant Jackson-Rogers in her individual capacity in an amount sufficient to punish and deter similar misconduct;

H. Award just compensation under the Takings Clauses of the United States and Michigan Constitutions, together with all compensation available through inverse-condemnation principles, including the fair market value of all property taken, retained, transferred, disposed of, or otherwise appropriated by Defendants;

I. Award damages for common-law conversion, including compensatory, consequential, and exemplary damages as permitted by Michigan law;

J. Award treble damages, attorney fees, costs, and all other relief authorized by MCL 600.2919a for statutory conversion;

K. Declare that:

(1) Plaintiffs possess lawful ownership and possessory interests in the animals, eggs, offspring, and other property described in this Complaint;

(2) Defendants' continued retention of Plaintiffs' property without constitutionally adequate procedures violates Plaintiffs' rights under the United States Constitution and Michigan law;

(3) Plaintiffs are entitled to information concerning the location, condition, custody, transfer, sale, disposition, and status of the seized property;

(4) Plaintiffs are entitled to immediate possession of any seized property that remains in Defendants' possession or control; and

(5) King's Animal Husbandry License remains valid unless suspended or revoked in accordance with the procedures required by law;

L. Order Defendants to preserve all records, videos, audio recordings, photographs (including metadata), communications, emails, text messages, reports, permits, licensing records, veterinary records, transfer records, and other documents relating to Plaintiffs, the Property, the 2021 seizure, the 2026 seizure, the 4-H program, the criminal proceedings, and the animals at issue in this litigation;

M. Award attorney fees and costs pursuant to 42 U.S.C. § 1988, MCL 600.2919a, and any other applicable statute or rule;

N. Award pre-judgment and post-judgment interest as permitted by law, including 28 U.S.C. § 1961 and MCL 600.6013; and

O. Grant such other and further legal, equitable, declaratory, and injunctive relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

Respectfully submitted,

KUSTRA & BLOOM PLC

/s/Steven J. Kustra

BY: Steven J. Kustra (P79002)
Attorneys for Plaintiffs
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586 – 4444
skustra@kustrabloom.com

Date: September 28, 2026